**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re:                                          Chapter 11

HELLO ALBEMARLE LLC,                            Case No. 1-23-41326-nhl

                        Debtor.

## CHAPTER 11 PLAN OF LIQUIDATION OF HELLO ALBEMARLE LLC

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Counsel to the Debtor*
*and Debtor-in-Possession*

Dated: March 20, 2025

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

ARTICLE 1 DEFINITIONS AND RULES OF INTERPRETATION .......................................... 1

ARTICLE 2 PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED...................... 7

ARTICLE 3 CLASSIFICATION OF CLAIMS ............................................................................ 8

ARTICLE 4 TREATMENT OF CLASSES AND CLAIMS ......................................................... 8

ARTICLE 5 MEANS OF IMPLEMENTATION OF THE PLAN ................................................ 9

ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES ...... 11

ARTICLE 7 CONDITIONS PRECEDENT ................................................................................ 12

ARTICLE 8 INJUNCTION; EXCULPATION; LIMITED RELEASE....................................... 13

ARTICLE 9 PROVISIONS GOVERNING DISTRIBUTIONS .................................................. 14

ARTICLE 10 PLAN INTERPRETATION, CONFIRMATION, AND VOTING ...................... 19

ARTICLE 11 RETENTION OF JURISDICTION BY BANKRUPTCY COURT...................... 20

ARTICLE 12 MISCELLANEOUS PROVISIONS..................................................................... 21

## INTRODUCTION

Hello Albemarle LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case, proposes this plan of liquidation pursuant to 1121 of the Bankruptcy Code. This Plan contemplates (i) the closing of the sale of the Debtor's Property, located in Brooklyn, New York, which is the only material asset of this Estate, to the Debtor's senior secured creditor pursuant to its successful credit bid; and (ii) the distribution of the Debtor's remaining cash on hand to the Debtor's general unsecured creditors in accordance with the terms of this Plan.

## ARTICLE 1
## DEFINITIONS AND RULES OF INTERPRETATION

**1.1      Definitions**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

**"Administrative Expense Claim"** means a Claim for costs and expenses of administration Allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's operations during the Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the wind-down of its operations during the Case, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets incurred during the Case, and (e) any fees or charges assessed against the Debtor's Estate under 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** shall have the meaning set forth in Section 5.5 of the Plan.

**"Allowed"** means, when referring to a Claim, a Claim against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules and as to which no objection has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Bar Date, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (ii) a Claim which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed or contingent, or (iii) a claim or Interest that is allowed by this Plan or Final Order of the Bankruptcy Court. An Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code; *provided, however*, that (i) a Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an Allowed Claim unless otherwise specified herein or by order of the Bankruptcy Court, (ii) an Allowed Claim shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, unless otherwise

specifically provided for in the Plan; and (iii) an Allowed Claim shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

**"Apartment Leases"** means all unexpired residential leases between the Debtor and the tenants and at the Property at the time of the Closing of the Property Sale.

**"Assets"** means any and all property of the Estate, including, without limitation, all property and other interests identified in section 541(a) of the Bankruptcy Code. Assets shall include all of the Debtor's real, personal, tangible, and intangible property, wherever located and whether acquired prior to or after the Petition Date, including Cash, real property, personal property, furniture, fixtures, equipment, artwork, intellectual property, accounts, tangibles, intangibles, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements, and accessions thereof.

**"Avoidance Action"** means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other applicable federal, state, or common law.

**"Ballot"** means the form distributed to a Holder of an Impaired Claim on which it is to be indicated whether such Holder accepts or rejects the Plan.

**"Bankruptcy Code"** means title 11 of the United States Code, as amended, in effect and applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of New York where the Case is pending.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect, and applicable to the Debtor's Case.

**"Bar Date"** means March 4, 2024, unless the Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for such specific Creditor, such different date set by the Court.

**"Bid Procedures Order"** means the *Order Approving (I) Bid Procedures In Connection With The Proposed Sale of Property and (II) Authorizing the Auction Sale* entered by the Bankruptcy Court in this Case on July 19, 2024 [Docket No. 109].

**"Business Day"** means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means legal tender of the United States of America.

**"Carve Out"** means the amount to be paid by NYSF, not to exceed $40,000.00, on account of the Allowed Professional Fee Claim of the Debtor's counsel for its reasonable fees and expenses

in connection its representation of the Debtor in the Case, as set forth in the *Stipulation of Settlement* entered by the Bankruptcy Court in this Case on November 22, 2023 [Docket No. 68].

**"Causes of Action"** means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings, and debts owing to the Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity, or otherwise, including Avoidance Actions.

**"Case"** means the Debtor's case under chapter 11 of the Bankruptcy Code, administered in the Bankruptcy Court under case number 1-23-41326-nhl.

**"Claim"** means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**"Claims Objection Bar Date"** means, unless otherwise extended by Order of the Court, the first Business Day that is 180 days after the Effective Date.

**"Class"** means a category of Claims described in Article 3 of the Plan.

**"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained, referenced, or incorporated in the Confirmation Order.

**"Creditor"** means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**"Debtor"** means Hello Albemarle LLC, the debtor and debtor-in-possession in this Case.

**"Disallowed"** means, when referring to a Claim, a Claim (including a Scheduled Claim), or any portion of a Claim, which has been disallowed or expunged by a Final Order.

**"Disclosure Statement"** means the disclosure statement for the Plan, and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**"Disclosure Statement Approval Order"** means the Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code entered in this Case on _____, 2025 [Docket No. ___].

**"Disputed"** means, with respect to a Claim against the Debtor, the extent to which the allowance of such Claim is the subject of a timely objection, complaint, or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice or determined by a Final Order.

**"Disputed Claims Reserve"** means the segregated accounts established by the Debtor, as necessary, consistent with Section 9.16 of the Plan.

**"Distribution"** means any distribution made pursuant to the terms of this Plan.

**"Distribution Date"** means any date on which a Distribution is made to Holders of Allowed Claims under this Plan. The first Distribution shall occur as soon as practicable on or after the Effective Date.

**"Distribution Record Date"** shall have the meaning set forth in Section 9.7 of this Plan.

**"Effective Date"** means the earlier of (a) the first Business Day after the entry of the Confirmation Order that (i) the closing of the Property Sale shall have occurred, and (ii) the effectiveness of the Confirmation Order has not been stayed, or (b) such other date following the Confirmation Date that the Debtor designates.

**"Equity Interest"** means an ownership interest in the Debtor.

**"Estate"** means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Order for Relief Date.

**"Fee Application Deadline"** shall have the meaning set forth in Section 5.6 of the Plan.

**"Final Order"** means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; *provided, however*, if an appeal, petition for writ of certiorari, or motion for reargument or rehearing has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, further*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**"General Unsecured Claim"** means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim.

**"Holder"** means any Person that holds a Claim against the Debtor.

**"Impaired"** means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**"Insurance Policies"** means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor or any other Person.

**"Lien"** means a "lien" as defined by section 101(37) of the Bankruptcy Code.

**"NYSF"** means NY Secured Funding LLC.

**"Order for Relief Date"** means September 22, 2023, the date the Bankruptcy Court entered the Order for Relief [Docket No. 22] in this Case.

**"Person"** means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**"Petition Date"** means April 19, 2023, the date upon which the Petitioning Parties filed Debtor filed an involuntary petition against the Debtor under Chapter 11 of the Bankruptcy Code and the instant Case was commenced.

**"Petitioning Parties"** means JG Albemarle LLC, JG Albemarle B LLC, YBCF Realty LLC, NBC Charitable Foundation LLC, Lisa Stewart Hughes, Jonathan Mueller, and Yitzchok and Leah Mueller.

**"Plan"** means this Plan and any exhibits or schedules annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**"Post-Confirmation Expenses"** means the administrative expenses accrued following the Effective Date, including without limitation, all fees and expenses of any expenses incurred by the Debtor after confirmation of this Plan.

**"Priority Non-Tax Claim"** means an Unsecured Claim, other than an Administrative Expense Claim, a Priority Tax Claim, or a General Unsecured Claim, which is entitled to priority in payment under sections 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**"Priority Tax Claim"** means an Unsecured Claim or a portion of an Unsecured Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code and the Property Tax Claims, as defined below.

**"Professional Fee Claim"** means any Claim of a professional retained in the Case pursuant to sections 327 or 1103 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the

extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**"Professionals"** means those professional persons, including lawyers, financial advisors, and accountants and other professionals retained by the Debtor.

**"Property"** means the real property located at 2417 Albemarle Road, Brooklyn, New York 11226 (Block 5110, Lot 68).

**"Property Sale"** means the Debtor's sale of the Property to NYSF pursuant to the Sale Order and this Plan.

**"Property Tax Claims"** means the Claims filed by the New York City Department of Finance (Proof of Claim No. 15) and the NYC Water Board (Proof of Claim No. 22).

**"Purchase Price"** means the purchase amount to be paid by the Buyer in connection with the Property Sale.

**"Sale Order"** means Order of the Bankruptcy Court approving the Property Sale in accordance with section 363 of the Bankruptcy Code entered in this Case on _____, 2025 [Docket No. ___].

**"Scheduled Claim"** means a Claim that is listed in the Debtor's Schedules.

**"Schedules"** means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**"Tax Information"** shall have the meaning set forth in Section 9.11 of this Plan.

**"Tax Information Request"** shall have the meaning set forth in Section 9.11 of this Plan.

**"Transfer Taxes"** shall mean any and all real estate transfer, stamp, sales, use, mortgage recording, or similar taxes, if and as applicable, that, absent the operation of section 1146 of the Code, may be incurred or arise in connection with the transactions contemplated by the Plan.

**"Unclaimed Distribution"** means any Distribution that is unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**"Unsecured Claim"** means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant

to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**"U.S. Trustee"** means any and all representatives and employees of the Office of the United States Trustee, Region 2: Eastern District Of New York (Brooklyn Division).

## 1.2    Rules of Interpretations

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a Holder of a Claim includes that Person's successors and assigns; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of the Plan; (f) the words "herein", "hereto", and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement or provisions of the documents comprising the Plan Supplement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

## ARTICLE 2
## PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

## 2.1    Claims Not Classified

No class is designated for Administrative Expense Claims, Professional Fee Claims, Property Tax Claims, and Priority Tax Claims.

### a.    Administrative Expense Claims

All Allowed Administrative Expense Claims, other than Professional Fee Claims, shall be paid by the Debtor, in full, in Cash, in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the  ordinary course of the Debtor's liquidation, or (c) as may be agreed upon between the Holder of any such Administrative Expense Claim and the Debtor.  Administrative Expense Claims are not Impaired by the Plan.

### b.    Priority Tax Claims

The Debtor does not owe any Priority Tax Claims to the best of its knowledge and belief. To the extent that any Priority Tax Claims are asserted, the Debtor will pay each of these Priority

Tax Claims in accordance with the terms and conditions of the particular transaction giving rise to each such Priority Tax Claim. Priority Tax Claims are not Impaired by the Plan.

### c.    Property Tax Claims

NYSF shall assume responsibility for payment of the Property Tax Claims and shall be paid by NYSF, in full, in Cash, as soon as practicable following the Effective Date. Property Tax Claims are not Impaired by the Plan.

### d.    Professional Fee Claims

The Debtor shall pay all Professional Fee Claims as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.6 hereof.  Professional Fee Claims are not Impaired by the Plan.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS

### 3.1    Criterion of Class

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

### 3.2    Class Categories

The following classes of Claims are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Description | Total Amount | Treatment | Status | Voting Rights |
|-------|-------------|--------------|-----------|--------|---------------|
| 1 | NYSF Secured Claim | $18,755,029.85 | Plan § 4.1 | Impaired | Entitled to Vote |
| 2 | Undersecured Lien Claims | $571,299.39 | Plan § 4.2 | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | $4,876,672.01 | Plan § 4.3 | Impaired | Entitled to Vote |
| 4 | Equity Interests | N/A | Plan § 4.4 | Impaired | Deemed to Reject |

## ARTICLE 4
## TREATMENT OF CLASSES AND CLAIMS

The following treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Plan shall be in full and final satisfaction of such Allowed Claims.

### 4.1    Class 1 (NYSF Secured Claim)

NYSF credit bid $7,500,000 of its Allowed Secured Claim as the purchase price in connection with the Property Sale. NYSF shall subordinate its deficiency claim to provide for a

distribution to Holders of Allowed General Unsecured Claims and shall not participate in any Distributions to the Holders of Allowed General Unsecured Claims, unless all such Holders of Allowed General Unsecured Claims are paid in full.

### 4.2    Class 2 (Undersecured Lien Claims)

The U.S. Small Business Administration (Claim No. 13), 1 Seal USA LLC (Claim No. 18), and Multivista NYC LLC (Claim No. 19) each filed a proof of Claim asserting a secured Claim against the Debtor and its Estate. As a result of the Property Sale, there is no collateral or proceeds to which any liens in connection with these Claims may attach. The Holders of Claims in Class 2 (Undersecured Lien Claims) will be treated as the Holders of General Unsecured Claims and subject to the treatment set forth below with respect to Class 3 (General Unsecured Claims).

### 4.3    Class 3 (General Unsecured Claims)

On or after the Effective, each Holder of an Allowed General Unsecured Claims shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, their *pro rata* share of the Debtor's Cash on hand on the Effective Date after payment of Allowed Administrative Expense Claims, or such lesser treatment as to which the Debtor and the Holder of any such Allowed General Unsecured Claim shall have agreed upon in writing.

### 4.4    Class 4 (Equity Interests)

No Distributions of any kind will be made to the Holders of Equity Interests.

### ARTICLE 5
### MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1    Plan Funding

As a condition to effectiveness of this Plan, the Debtor must close the Property Sale. The Property Sale shall be exempt from otherwise applicable Transfer Taxes in accordance with section 1146(a) of the Bankruptcy Code.

The Plan and the Distributions hereunder shall be funded by the Debtor's Cash on hand and the Carve Out; *provided, however*, that the Property Tax Claims shall be paid and satisfied directly by NYSF at the closing of the Property Sale as provided in the Sale Order.

### 5.2    Approval of the Property Sale

In addition to the Sale Order, in accordance with Section 1123(b) of the Bankruptcy Code, the filing of the Plan shall constitute a motion for an order of the Bankruptcy Court approving, and the Confirmation Order shall constitute the Bankruptcy Court's approval of, the Property Sale, and all documents ancillary to or executed in connection with the Property Sale, and the Debtor's taking all actions necessary or appropriate to consummate the transaction contemplated thereby, as fair and equitable and in the best interests of the Debtor's Estate. Pending the closing of the Property Sale, the Debtor, along with its retained professionals, including CAM Property Management, LLC, shall be authorized to continue to operate, maintain, and preserve the Property.

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms of the Property Sale.

The consummation of the closing of the Property Sale is a transfer under, pursuant to, in connection with, and in furtherance of the Plan, the Sale Order, and the Confirmation Order will provide that such sale, transfer, and delivery of any and all instruments of transfer, including, without limitation, the applicable deed, in connection therewith shall not incur any Transfer Taxes as permitted by section 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008).

### 5.3    Preservation of Causes of Action

Except as otherwise provided in this Plan or in any contract, instrument, release or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity are preserved, including without limitation, any and all Causes of Action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code.  The Debtor shall have standing to pursue any and all Causes of Action pursuant to this Plan.

### 5.4    General Disposition of Assets

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of this Plan, as soon as is reasonably practicable following the Effective Date, the Debtor shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets in such manner as the Debtor shall determine is in the best interests of the Estate.

### 5.5    Administrative Expense Claims Bar Date

With the exception of Professional Fee Claims, persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is thirty (30) days after notice of the Effective Date has been mailed (the "Administrative Expense Claims Bar Date"). No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor and its Estate.

### 5.6    Deadline for Filing Applications For Payment of Professional Fee Claims

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court a final application and/or an application for payment of reasonable fees and expenses on the date that is thirty (30) days after notice of the Effective Date has been mailed (the "Fee Application Deadline").  Any Professional failing to file and serve such application on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtor and its Estate.

**5.7     Execution of Documents to Effectuate Plan**

From and after the Effective Date, the Debtor shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Debtor to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

**5.8     Dissolution Upon Closing of the Case**

Following the Effective Date, the Debtor shall continue in existence for the purposes of, among other things, completing the liquidation of its Assets, winding up its affairs, and filing appropriate tax returns.  Upon the entry of an order closing this Case, the Debtor shall be deemed dissolved for all purposes. No other actions or filings or payments shall be required in furtherance of such dissolution.

**5.9     Post-Confirmation Reports and Fees**

Following the Effective Date and until the Case is closed, not less than once every ninety (90) days, the Debtor shall file all post-Effective Date reports required during such periods and shall pay all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. § 1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**5.10    Closing of Case**

Notwithstanding anything to the contrary contained herein, upon substantial consummation of the Plan, the Debtor may seek to close the Case and render a final report on notice to Holders of then Allowed Claims.

**5.11    Insurance Preservation**

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor or any other Person.

**ARTICLE 6**
**TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES**

**6.1     General Provisions**

Except for the Apartment Leases that NYSF has agreed to assume in connection with the Property Sale, all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

**6.2**   **Notice of Deemed Rejection/Rejection Bar Date**

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date.  The failure to timely file a proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

**ARTICLE 7**
**CONDITIONS PRECEDENT**

**7.1**   **Conditions Precedent to Confirmation of the Plan**

The following conditions must be satisfied, or otherwise waived in accordance with Section 7.3, on or before the Confirmation Date:

a.      the Disclosure Statement Approval Order shall have been entered and shall have become a Final Order; and

b.      the Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably satisfactory to the Debtor and shall contain provisions that, among other things, (i) authorize the implementation of the Plan in accordance with its terms, (ii) approve in all respects the transactions and agreements effected pursuant to the Plan, including the Property Sale; and (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud.

**7.2**   **Conditions Precedent to the Occurrence of the Effective Date**

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3, on or before the Effective Date:

a.      the Confirmation Order shall have been entered and no stay of its effectiveness shall have been issued within fourteen (14) days following the entry of the Confirmation Order; and

b.      the closing of the Property Sale shall have occurred.

**7.3**   **Waiver of Conditions Precedent**

Each of the conditions precedent in Sections 7.1 and 7.2 may be waived or modified without further Court approval, in whole or in part, but only with the consent of the Debtor and NYSF.

## ARTICLE 8
## INJUNCTION; EXCULPATION; LIMITED RELEASE

**8.1    General Injunctions**

The following provisions shall apply and shall be fully set forth in the Confirmation Order.

### a.    Injunctions Against Interference with Plan

All Holders of Claims shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor or the Estate with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments, and Distributions to be made hereunder.

### b.    Plan Injunction

Except as otherwise specifically provided for by this Plan, as of and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order; (ii) the creation, perfection, or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor or the Estate to the fullest extent authorized or provided by the Bankruptcy Code.

**8.2    Exculpation**

As of the Confirmation Date, the Debtor and its professionals (including professional firms and individuals within such firms) shall be deemed to have solicited any required acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor and its professionals, including professional firms and individuals within such firms (acting in such capacity), shall not have or incur any liability to any Holder of any Claim or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Case, the Disclosure Statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Case, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, including, without limitation, the steps taken to effectuate the transactions described in Article 5 of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions constituting fraud, willful misconduct, or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**8.3    Release of Eli Karp by NYSF**

NYSF hereby releases Eli Karp ("Karp") from the Recourse and Rebalance Guaranty dated April 18, 2019 (the "Albemarle Guaranty"), executed in connection with Debtor's receipt of

secured financing from NYSF prior to the Petition Date, and NYSF waives any right to claim that subdivisions (E), (F), (G), (J), and/or (K) of Section 1.2 of the Albemarle Guaranty has been triggered as a result of this Case. For the avoidance of doubt, any such releases granted to Karp by NYSF under the terms of the Plan shall not apply to any and all other claims and causes of action, unrelated to the Debtor's case, that NYSF or its affiliates, including iCross Fund 4, LLC, have or may have against Karp.

**8.4    No Bar to Claims Against Third Parties**

Except as set forth herein, Holders of Claims against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor.

**8.5    All Distributions Received in Full and Final Satisfaction**

Except as otherwise set forth herein, all payments, all Distributions to be made in accordance with the Plan on account of Claims, and all rights conferred under this Plan shall be received in full and final satisfaction of the Estate's obligations for such Claims as against the Debtor, its property, and the Estate.

**8.6    No Modification of Res Judicata Effect**

The provisions of this Article 8 are not intended, and shall not be construed, to modify the res judicata effect of any order entered in the Case, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

**8.7    No Discharge**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge the Debtor of any debts.

**ARTICLE 9**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**9.1    Distributions**

The Debtor shall make Distributions in accordance with Article 4 of the Plan. The Debtor may use the services of a third party to aid in the Distributions required to be made under this Plan.

**9.2    Indefeasibility of Distributions**

All Distributions made under the Plan shall be indefeasible.

**9.3    Frequency of Distributions**

The Debtor shall make distributions as soon as practicable after the Effective Date, or such other times that it determines appropriate, in its discretion.

### 9.4     Payment in U.S. Dollars

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on domestic bank(s) selected by the Debtor in accordance with the Plan or by wire transfer from a domestic bank.

### 9.5     Distributions Only on Business Days

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, then such Distribution shall instead be due the next Business Day.

### 9.6     Transmittal of Payments and Notices

Except as otherwise provided in the Plan, all Distributions shall be made to the Holder of an Allowed Claim by regular first-class mail, postage prepaid, in an envelope addressed to such Holder at the address listed on its proof of Claim filed with the Bankruptcy Court or, if no proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a Holder of a Claim provides to the  Debtor after the Effective Date in writing at least fifteen (15) business days prior to a Distribution Date. The Debtor shall have no duty or obligation to ascertain the mailing address of any Holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.  Payments made in accordance with the provisions of this Section 9.6 shall be deemed made to the Holder regardless of whether such Holder actually receives the payment.

### 9.7     Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings made on or before the Effective Date (the "Distribution Record Date") shall be treated as the Holders of those Claims for all purposes of this Plan, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Distribution Record Date. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making a Distribution with respect to any Allowed Claim, the Debtor shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of Claim filed with respect to such Claim, on the Debtor's Schedules as the Holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Distribution Record Date.

### 9.8     Unclaimed Distributions

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Debtor as undeliverable to the addresses of record as of the Record Date), shall be canceled (by a stop payment order or otherwise) and the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court. Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

**9.9     No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars**

Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with a half-penny or less being rounded down and fractions in excess of half of a penny being rounded up.

**9.10     Setoff and Recoupment**

Except as otherwise provided in the Plan, the Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment against the Holder of any Claim.

**9.11     Payment of Taxes on Distributions Received Pursuant to the Plan**

Notwithstanding any provision to the contrary herein, as a condition to payment of any Distribution to a Creditor under this Plan, each Creditor shall provide a valid tax identification or social security number (collectively the "Tax Information") for purposes of tax reporting by the Debtor.  All Persons that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

At such time as the Debtor believes that Distributions to a particular Class of Claims is likely, the Debtor shall request Tax Information in writing from Creditors (the "Tax Information Request").  Any Creditor who fails to respond to Tax Information Request within ninety (90) days from the date posted on the Tax Information Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds will revert to the Estate, as applicable, to be disbursed in accordance with the terms and priorities established in this Plan.

**9.12     Compliance With Tax Withholding and Reporting Requirements**

With respect to all Distributions made under the Plan, the Debtor will comply  with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

**9.13     Disputed Distributions**

If a dispute arises as to the identity of a Holder of an Allowed Claim who is to receive a Distribution, the Debtor may, in lieu of making such Distribution to such Holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

**9.14    Claims Administration Responsibility**

      a.    <u>Reservation of Rights</u>

Unless a Claim is specifically Allowed prior to or after the Effective Date, and except for the claims of NYSF, whose claims have been deemed allowed pursuant to the final cash collateral order entered on _____, 2025 [Docket No. ___], the Debtor reserves any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Priority Non-Tax Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of the Claim.

      b.    <u>Objections to Claims</u>

Prior to the Effective Date, the Debtor shall be responsible for pursuing any objection to the allowance of any Claim. From and after the Effective Date, the Debtor may dispute, object to, compromise or otherwise resolve all Claims. Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than one hundred eighty (180) days after the Effective Date, provided that the Debtor may request (and the Bankruptcy Court may grant) an extension of time by filing a motion with the Bankruptcy Court.

      c.    <u>Filing Objections</u>

An objection to a Claim shall be deemed properly served on the claimant if the Debtor effects service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's proof of claim at least thirty (30) days prior to the hearing thereon. The Debtor may also effectuate service of an objection to a claim: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, to the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto or; (iii) by first class mail, postage prepaid, on counsel that has appeared on the behalf of the claimant in the Case.

      d.    <u>Determination of Claims</u>

Except as otherwise agreed by the Debtor, any Claim as to which a proof of claim or motion or request for payment was timely filed in the Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law. Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

**9.15    Disallowance of Claims Without Further Order of the Court**

As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed Disallowed and expunged without further Order of the Bankruptcy Court. All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim, and the Scheduled Claim, regardless of priority, shall be expunged from the claims register; *provided, however*, that such proofs of Claim shall be subject to objection in accordance with Section 9.14 hereof.

**9.16    Disputed Claims**

Except to the extent the Court determines that a lesser amount is adequate, the Debtor shall, on each Distribution Date, deposit in a Disputed Claims Reserve, Cash equal to the Distributions that would have been made to Holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the Holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Debtor or the Holder of such Claim.

For purposes of effectuating the provisions of this Section 9.16 and the Distributions to Holders of Allowed Claims, the Court, upon the request of any Holder of a Claim, on the one hand, or the Debtor, on the other hand, may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the Holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such Holder would have been entitled if such Holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

In no event shall any Holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.16.  In no event shall the Debtor have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, or gross negligence.  In no event may any Creditor whose Disputed Claim is subsequently Allowed, pursue or recover or from any other Creditor in respect of any funds received as Distributions under the Plan.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Debtor shall make, in accordance with the terms of this Plan, a Distribution of the excess amount reserved for such Disputed Claim.

Any Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

**9.17    Limitations on Funding of Disputed Claims Reserve**

Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, the Debtor shall have no duty or obligation to fund the Disputed Claims Reserve.

**9.18    Timing of Distributions on Disputed Claims Subsequently Allowed**

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.19    No Payment or Distribution on Disputed Claims**

Notwithstanding any provision to the contrary herein, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is Allowed by Final Order of the Bankruptcy Court.  For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution.  Holders of Disputed Claims shall be bound, obligated, and governed in all respects by this Plan.

**ARTICLE 10**
**PLAN INTERPRETATION, CONFIRMATION, AND VOTING**

**10.1    Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2    Withdrawal and Modification of Plan**

This Plan may be withdrawn or modified by the Debtor at any time prior to the Confirmation Date. The Debtor may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation. Upon request by the Debtor, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**10.3    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

**10.4  Voting of Claims**

Each Holder of an Allowed Claim in Class 1 (NYSF Secured Claim), Class 2 (Undersecured Lien Claims), and Class 3 (General Unsecured Claims) shall be entitled to vote to accept or reject the Plan. The Disclosure Statement Approval Order shall govern the manner and procedures for casting of Ballots.

**10.5  Acceptance by Impaired Class**

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the Holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**10.6  Cram Down**

The Debtor will request, in the event that at least one (1) impaired Class entitled to vote on the Plan accepts the Plan, that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the possible rejection of the Plan by any impaired Class entitled to vote on the Plan and the Plan shall constitute a motion for such relief.

**ARTICLE 11**
**RETENTION OF JURISDICTION BY BANKRUPTCY COURT**

**11.1  Retention of Jurisdiction**

From the Confirmation Date until entry of a final decree closing the Case, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Case for the following purposes:

a.  to hear and determine any and all objections to the allowance of any Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly, or contingently affect the obligations of the Debtor to any Creditors, Holders of Claims, or other parties in interest;

b.  to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

c.  to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

d.  to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction to hear and determine compromises and settlements of any and all Causes of Action;

e.      to enforce and interpret the provisions of this Plan and the Confirmation Order;

f.      to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

g.      to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

h.      to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and the intent of this Plan;

i.      to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code; and

j.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

### 12.1    Headings

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

### 12.2    No Attorneys' Fees

No attorneys' fees with respect to any Claim shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

### 12.3    Notices

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties:

If to the Debtor:

Hello Albemarle LLC
c/o Kudman Trachten Aloe Posner LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Attn:  Paul H. Aloe, Esq. (paloe@kudmanlaw.com)
         David N. Saponara, Esq. (dsaponara@kudmanlaw.com)

## 12.4    Binding Effect

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall  survive and remain effective after entry of any order which may be entered converting the Debtor's Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Dated: March 20, 2025

                                                      HELLO ALBEMARLE LLC

                                                      By:      */s/ Eli Karp*
                                                      Name:  Eli Karp
                                                      Title:   Manager

Approved as to form:

By:      */s/ David N. Saponara*
           Paul H. Aloe
           David N. Saponara
           KUDMAN TRACHTEN ALOE POSNER LLP
           488 Madison Avenue, 23rd Floor
           New York, New York 10022
           Tel: (212) 868-1010
           paloe@kudmanlaw.com
           dsaponara@kudmanlaw.com

           *Counsel to the Debtor*
           *and Debtor-in-Possession*